(No. 26033.—)
THE RACINE FUEL COMPANY, Appellee, *vs*. O. A. RAWLINS *et al.*—(O. A. RAWLINS, Appellant.)

*Opinion filed September 17, 1941.*

STEVENS & CARRIER, (GEORGE M. STEVENS, and GEORGE M. STEVENS, JR., of counsel,) for appellant.

CECIL C. ERICKSON, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on leave to appeal granted to review the judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county, in an action whereby plaintiff seeks to recover from the defendant Rawlins (hereinafter referred to as the defendant) and Julia Nankervis the unpaid balance of the purchase price of certain coal delivered on the order of defendant.

The complaint originally was of two counts. The first charged conspiracy between the defendant and one Julia Nankervis to defraud the plaintiff out of a certain portion of the purchase price of coal delivered to Rawlins. The second count charged the purchase by Rawlins of a certain amount of coal, for which he became liable, and that knowing of the acquaintance of defendant Julia Nankervis with the officers of the plaintiff company, he, with intent to cheat plaintiff, induced said Nankervis to place orders for him for coal at the market price, and made a secret arrangement with Nankervis to pay her for the coal at a price below the market price. This count charged on information and belief that Nankervis was acting as the agent and tool of the defendant in securing delivery of the coal, and that the defendant intended to defraud plaintiff, who was lead to believe the coal would be paid for at the market price, but that defendant had a secret inten-

tion to pay for it only at the lower price agreed upon between him and Nankervis. This count asks as damages the unpaid balance of the market price of the coal. The record showed that balance to be $3218.37. The *ad damnum* was that sum. The first count was withdrawn.

The jury returned a verdict for plaintiff for $2918.37, it appearing in the evidence that a check for $300 had been sent by the defendant to the plaintiff as payment for coal. Payment of this check had been stopped, however, when plaintiff's president sought collection of the account.

Plaintiff's evidence is that Julia Nankervis, who had been connected with various coal and fuel companies in the city for some years, had stated to plaintiff's president that she believed she could secure the business of the defendant Rawlins, and that subsequent to that time she placed orders on behalf of Rawlins for delivery of coal to various buildings. Plaintiff accepted these orders and on the day of the delivery of the coal mailed an invoice to the defendant for each load delivered, showing the quantity and kind of coal and the price. Defendant admitted receiving the invoices but testified that on taking up the matter of difference in price with Julia Nankervis she told him to pay no attention to the invoices. In this he is corroborated by Nankervis. Payments were made on account at different times, sometimes in cash but usually by a check made out to the defendant, who, it appeared, did not have a bank account.

In December, 1936, plaintiff's president asked the defendant to pay the balance due and defendant refused, saying that he had paid for all the coal he bought and that Julia Nankervis had made him a price of $6.50 per ton. Nankervis admitted that such arrangement had been made. About this time Julia Nankervis ordered coal for the defendant from the Home Fuel and Supply Company and approximately a carload of coal was delivered to two or three buildings for defendant's benefit. When a repre-

sentative of the coal company called to secure payment of it, the defendant told him that he did not buy any coal from them but that he bought all his coal from the Racine Fuel Company, plaintiff in this case. As a result the Home Fuel and Supply Company recovered the coal in replevin proceedings.

On the trial of the case two special interrogatories were given the jury on behalf of the plaintiff and answered by it. One was: "Do you find the defendant O. A. Rawlins guilty of willful and wanton conduct as alleged in plaintiff's complaint herein; that such conduct proximately caused the damages complained of by plaintiff in said complaint and that malice is the gist of the action, as set forth in said complaint?" The second interrogatory was in the same form but limited to the second count of the complaint. Both were answered in the affirmative. Defendant says, here, that the submission of these special interrogatories was prejudicial error. It is also complained here that there was no proof of fraud and that the court erred in giving and refusing instructions.

Count two of the complaint, while charging fraud, presented a case in assumpsit. The relief sought was the difference between the amount paid and the purchase price of the coal. The verdict submitted to the jury by the plaintiff was as follows: "We, the jury, find the issues for the plaintiff and against the defendant and assess plaintiff's damages at the sum of . . . . . . Dollars." This verdict was returned in that language, the jury filling in the sum of $2918.37.

We are unable to determine whether counsel for plaintiff intended this action to be one in fraud and deceit or an action merely for recovery of balance on account, in which they allege that the defendant fraudulently sought to secure the coal without paying the full purchase price therefor. The rule is that transactions are presumed to be fair and honest until the contrary is proved by clear

and convincing evidence (*Carter* v. *Carter*, 283 Ill. 324) although it is not required that fraud be established by direct and positive proof. Any conduct capable of being turned into a statement of fact is a representation. It is sufficient if the proof shows acts such as to mislead a reasonably cautious and prudent man in regard to existence of a fact forming a basis of or contributing to an inducement to some change of position by him. (*Leonard* v. *Springer*, 197 Ill. 532.) Fraud is not presumed but must be proved like any other fact by clear and convincing evidence. (*Parker* v. *Dameika*, 372 Ill. 235; *Woodrow* v. *Quaid*, 292 id. 27.) It is not sufficient that there be mere suspicion of fraud but fraud, if it exists, must be satisfactorily shown. *Union Nat. Bank* v. *State Nat. Bank*, 168 Ill. 256.

Appellant admits that he purchased the coal from appellee through Julia Nankervis who, he says, was the agent of appellee. He admits that he received the coal and the statements from appellee, each of which stated a price greater than quoted by Julia Nankervis, which latter price he promised to pay and did pay. The proof is that when he received the first invoice he talked to Julia Nankervis and that she told him to pay no attention to invoices; that the price she was quoting to him would be the price he would have to pay. When asked by the plaintiff to pay the balance he replied that he bought the coal from Julia Nankervis and not from the plaintiff.

In this case counsel argue that the second count of the complaint charged appellant with fraud in not paying for the coal. The gist of the action, however, was not appellant's fraud but his failure to pay in full for the coal delivered to him. The damages sought are not unliquidated damages arising out of fraudulent acts of the defendant, but for the unpaid balance on account. The jury, by its verdict, did not find defendant guilty but, as we have seen, found the issues for the plaintiff and assessed the plaintiff's damages at the exact amount of the balance of the

purchase price of the coal less the $300 check. The record contains no proof of misrepresentations made by the defendant to the plaintiff. His dealings were solely with Julia Nankervis. His silence when receiving bills is evidence tending to establish liability for the account, but can scarcely be said to amount to a representation upon which an action in fraud and deceit may be based.

The record shows that for some years prior to the commencement of dealings with the defendant the plaintiff had been paying Nankervis a commission on all coal delivered at her direction. It permitted her to collect on this account and made no inquiry of the appellant as to why his balance was getting larger, until its president called upon him for a settlement, as hereinbefore stated. This was evidence tending to establish that Nankervis was plaintiff's agent.

If this cause of action were to be considered as one coming within the definition of an action in fraud and deceit, the evidence would be insufficient to sustain it. To sustain such an action there must be proof of misrepresentation by defendant to plaintiff. (*Johnston* v. *Shockey*, 335 Ill. 363; *Krankowski* v. *Knapp*, 268 id. 183; *Prentice* v. *Crane*, 234 id. 302.) The evidence tends to show Nankervis false to her trust, but unless there be evidence tending to establish a conspiracy between her and the defendant, proof of her breach of trust is not, of itself, proof of misrepresentation on the part of the defendant, such as is required to support an action in fraud and deceit. As we have seen, count one, charging conspiracy of these two, was withdrawn.

In this condition of the record the query comes whether the special interrogatories should have been given. They are open to several objections. One was that they asked the jury to say whether malice was the gist of the action, without explaining to the jury what the language of the interrogatories meant. Malice cannot be said to be the gist of an action in assumpsit in the absence of proof of

misrepresentations which would support an action in fraud and deceit. Another objection to the first interrogatory is that it applied to the entire complaint, though the first count had been withdrawn from the jury's consideration. And third, the evidence did not support an action in fraud and deceit and, therefore, in the absence of such proof, a finding of the jury that malice was the gist of the action was not proper. It must be borne in mind also that the complaint in this case does not set out an action in fraud and deceit though fraud is charged. No punitive damages were asked but the relief sought was the balance of the market price of the coal. It was not proper to give these interrogatories in that condition of the record.

Counsel for the defendant also object to these interrogatories on the ground that they were not submitted to them before argument, as required by section 65 of the Practice act. (Ill. Rev. Stat. 1939, chap. 110, par. 189.) Counsel for the plaintiff say they were submitted before the argument. The record is silent on that matter. While the submission of such special interrogatories to opposite counsel is mandatory under the statute referred to, no objection appears to have been made by counsel for the defendant at the time of the oral arguments when the plaintiff's counsel mentioned them to the jury, or when the instructions were read. We think the presumption of regularity of proceedings, aided by the conduct of counsel for the defendant, negatives a breach of the statute in that regard.

Since this cause must be tried again, it is necessary to examine objections to instructions. Plaintiff's instruction No. 1 is objected to. This instruction told the jury that in a civil action, the party alleging fraud is not required to prove its existence beyond a reasonable doubt, but that it is sufficient if the fraud alleged is established in the minds of the jury by the weight and preponderance of the evidence, and that it is not necessary that the proof be of such character as would warrant a conviction of the de-

fendant in a criminal prosecution for false and fraudulent representation. While instruction No. 1 may be criticized as to form, it does not misstate the law. *Sundquist* v. *Hardware Mutual Fire Ins. Co.* 371 Ill. 360.

Plaintiff's instruction No. 2 is objected to. This instruction told the jury that if the defendant knowingly, willfully, fraudulently, maliciously and deceitfully caused damage to the plaintiff, then in fixing the amount of damages the jury would not be confined to actual damages but might award punitive damages. This instruction was open to criticism (*Laughlin* v. *Hopkinson,* 292 Ill. 80) but in view of the form of verdict submitted, and the demand for liquidated damages, and the further fact that no punitive damages were awarded by the jury, defendant was not injured and the error in giving this instruction does not constitute ground for reversal.

Plaintiff's instruction No. 3 is also complained of. This instruction told the jury that if it found for the plaintiff, the measure of the damages would be the fair and reasonable market value of the coal delivered less payments made on account of the purchase of the coal. This instruction was within the evidence and giving it was proper.

Counsel for the defendant also object to plaintiff's modified instruction, which told the jury that fraud may be proved by circumstantial evidence as well as positive proof; that it may be inferred from strong presumptive circumstances, and that if the jury believe from a preponderance of the evidence that there are facts and circumstances, they should be taken into consideration in determining whether the defendant fraudulently intended not to pay for the coal delivered. This instruction, though not well drawn, is not erroneous.

For the reasons given in this opinion the judgments of the Appellate Court and the superior court of Cook county are reversed and the cause is remanded to the superior court of Cook county.

*Reversed and remanded.*